## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **MS. S.,** individually and as a parent and legal guardian of B.S., a minor, | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) |
| **REGIONAL SCHOOL UNIT 72**, | ) )      **2:13-cv-453-JDL** |
| **Defendant,** | ) ) |
| **and** | ) ) |
| **STATE OF MAINE DEPARTMENT OF EDUCATION,** | ) ) ) |
| **Intervenor-Defendant.** | ) |

## ORDER ON REMAND ISSUES

Ms. S. contends that her son was denied a free appropriate public education as required by the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C.A. § 1400, *et seq.* (2017).  After a lengthy procedural history, including a decision by the U.S. Court of Appeals for the First Circuit remanding this case for further proceedings, the case now presents a single question of law for decision: whether the two-year Filing Limitation contained in section XVI.13.E of the Maine Unified Special Education Regulation ("MUSER"), 05-071 C.M.R. ch. 101, adopted in 2010, is valid. I conclude that the rule is invalid and that, as a consequence, Ms. S. is entitled to an additional evidentiary administrative hearing on the portion of her claims that remain in dispute.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A.      Background

As a child, Ms. S.'s son, B.S., experienced developmental delays.  Due in part to those delays, B.S. was enrolled in special education classes on and off throughout his childhood.  As he got older, B.S.'s diagnoses and his individualized education plan were adjusted several times.   Despite his challenges, B.S. was academically successful at times.  At one point, B.S. consistently earned grades in the mid-90s.

At the start of his ninth grade year, B.S. was enrolled at Fryeburg Academy, and the school determined that he did not require special education services.  As the year progressed, however, the school re-evaluated B.S.'s needs and moved him to a "transition program."  B.S. remained at Fryeburg Academy until the middle of his eleventh grade year, when he transferred to the REAL school, where he completed his high school education.  Throughout his time at Fryeburg Academy, the school re-adjusted his educational plan several times.

In the appeal taken in this case, the U.S. Court of Appeals for the First Circuit upheld my earlier decision that B.S. was—with one exception—provided a free appropriate public education in his eleventh and twelfth grade years in keeping with the requirements of the IDEA, but overturned my conclusion that Ms. S.'s claims against Regional School Unit 72 ("the School District") related to B.S.'s ninth and tenth grade years were time-barred under MUSER.

## B.      Relevant MUSER Rule Changes

The timeliness of Ms. S.'s hearing request as to her son's ninth and tenth grade years was affected by changes to the MUSER rules that the Department initiated in

2009. MUSER implements the IDEA in Maine. *Ms. S. v. Reg'l Sch. Unit 72*, 829 F.3d 95, 102 (1st Cir. 2016). Although the IDEA employs its own procedure for requesting a due process hearing, the federal statute permits variation at the state level. *See, e.g.*, 20 U.S.C. § 1415(f)(3)(C) (2017) ("A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows."). Two MUSER rules govern the due process hearing timeline. In its decision in this case, the First Circuit characterized these rules as the "Look-Back Term" and the "Filing Limitation."

The Look-Back Term is set forth in MUSER § XVI.5A(2), and, as the name suggests, looks backward by limiting how far back in time a claim may reach once a parent or district knows or should have known of an asserted violation. MUSER, 05-071, C.M.R. ch. 101 § XVI.5.A(2). The rule currently provides a two-year Look-Back Term:

> The due process hearing request must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process hearing request.

*Id.*

The Filing Limitation, set forth in MUSER § XVI.13.E, is forward looking and specifies the time within which a parent or school district must file a request for a due process hearing once the parent or district knew or should have known of the action that is the basis for the request. MUSER, 05-071, C.M.R. ch. 101 § XVI.13.E. It currently provides a two-year Filing Limitation:

> A parent or agency must request an impartial hearing on their due
> process hearing request within two years of the date the parent or
> agency knew or should have known about the alleged action that forms
> the basis of the due process hearing request.

*Id.*

In 2009, MUSER'S Look-Back Term and Filing Limitation were each four years. They varied from the corresponding federal provisions in the IDEA, which are each two years. In its decision, the First Circuit explained that these provisions operate in tandem so that, when both were set at four years,

> a parent might have had eight years from the date of an alleged violation
> to file an IDEA due process hearing request: the violation could have
> taken place up to four years before the parent knew or should have
> known about the violation (the look-back term), and then, from the point
> at which the parent knew or should have known about the violation, the
> parent had another four years to decide if he or she would like to request
> a due process hearing (the filing limitation).

*Ms. S.*, 829 F.3d at 103.

In 2009, the State of Maine Department of Education ("the Department") simultaneously adopted an emergency rule change and proposed a major substantive rule change so that the MUSER Look-Back Term and Filing Limitation would align with the corresponding two-year federal provisions. 5 M.R.S.A. §§ 8072, 8073. While agencies undertaking a major substantive rule change procedure must wait for legislative approval before finally adopting proposed changes, 5 M.R.S.A. § 8072, an emergency rule temporarily takes effect before earning legislative approval, 5 M.R.S.A. § 8073; in that sense, it is a stop-gap, and in this case the Department employed it to implement its intended rule changes while awaiting legislative

approval.[1]    Both types of rule changes require notifying the public and the Legislature.  5 M.R.S.A. §§ 8053, 8072, 8073.  The following recounting of the relevant notices issued by the Department is crucial to the outcome of questions presented.

The Department posted several public notices.   In November 2009, the Department submitted two Notices of Agency Rulemaking Proposals to Maine's Secretary of State.   The notices summarized the Department's proposed rules, and the summaries were disseminated to inform the public and solicit comments before a public hearing.   One notice pertained to the proposed major substantive rule change, and the other pertained to the emergency rule change.   Both notices employed the same language with respect to changes to the due process hearing timeline, stating that "pursuant to the Department's intent not to exceed minimum federal

---

[1]   The First Circuit explained how the simultaneous promulgation of emergency rules and proposed rules operates:

> Under MAPA, a state agency seeking to adopt a "major substantive rule" may initiate the rulemaking process in two ways: by following the standard procedures prescribed for such rules or by seeking temporary adoption of an "emergency rule." Me. Rev. Stat. Ann. tit. 5, §§ 8072, 8073. The two paths may be pursued simultaneously, which is what occurred here. *See id.* Hence, because the MDOE proposed the Filing Limitation as both a major substantive rule and an emergency rule, we review the MAPA requirements for each.

> Although major substantive rules are subject to greater scrutiny than routine technical rules, the standard rulemaking process begins with the same notice and comment procedures applicable to such routine rules. *See id.* §§ 8072, 8052, 8053. In addition, "every major substantive rule is also subject to legislative review," as described in MAPA section 8072. *Id.* § 8072 (preamble); *see also id.* § 8071.3.B. A major substantive "rule has legal effect only after review by the Legislature followed by final adoption by the agency." *Id.* § 8072.1.

> A major substantive rule also may be proposed as an "emergency rule," i.e., one that "is necessary to avoid an immediate threat to public health, safety or general welfare." *Id.* §§ 8054.1, 8073. If an agency finds that implementation of a rule meets this standard, it may "modify" the rulemaking requirements to accelerate "adoption of rules designed to mitigate or alleviate the threat found." *Id.* § 8054.1. Emergency rules, however, are not permanent. In certain circumstances, an emergency major substantive rule may be effective "for up to 12 months or until the Legislature has completed review." *Id.* § 8073. Thus, at the very least, the Legislature must review any changes to a major substantive rule adopted through the emergency process to make such a rule permanent.

*Ms. S.*, 829 F.3d 95 at 105-06. (internal footnote omitted).

requirements and to address cost containment . . . the statute of limitations for due process hearings will be changed to the federal standard of two years."  ECF No. 71 at 4, 5.

Each notice was accompanied by a version of MUSER with strikeouts and underlines indicating the proposed changes.[2]  In the proposed changes, the Look-Back Term's strikeouts and underlines indicated a change from four years to two, while the filing deadline provision was untouched.  ECF No. 22-1 at 13, 15.  Additionally, MUSER contains an Appendix with a document entitled "Notice of Procedural Safeguards," which is used to instruct the public about the rights guaranteed under MUSER, and it was also revised to reflect the proposed changes.  The Notice of Procedural Safeguards contained strikeouts and underlines that corresponded to the proposed change to the Look-Back Term from four years to two years:

> The due process *hearing request* must allege a violation ~~*whether a State or federal cause of action under the IDEA*~~ that happened not more than ~~*four*~~ *two* years before you or the SAU knew or should have known about the alleged action that forms the basis of the due process *hearing request*.

ECF 22-1 at 17.  The Filing Limitation was addressed in the "Due Process Hearing Procedure" section of the Notice of Procedural Safeguards.  It indicated two non-substantive corrections and did not show any change to the four-year Filing Limitation:

---

[2]  There are three versions of the proposed MUSER rule changes in the administrative record which are identical except for their paginations and cover sheets.  Per the cover sheets, these versions are: (1) "Proposed Emergency Refinements," ECF No. 22-1 at 1-19, which accompanied the proposed emergency rule changes, (2) "Proposed for Provisional Adoption," ECF No. 71-6 at 19-23, which reflected the proposed major substantive rule changes,  and (3) "Emergency Regulation," ECF No. 71-5 at 15-19, which is the version of MUSER that went into effect when the agency adopted the emergency rule changes.  For ease of reference, throughout this opinion I will refer exclusively to the Proposed Emergency Refinements when discussing the proposed MUSER changes, unless otherwise specified.

You or the SAU must request an impartial hearing on a due process *hearing request* within –*four years* of the date you or the SAU knew or should have known about the issue addressed in the *hearing request*.

ECF 22-1 at 19.

Thus, both the MUSER Filing Limitation and the explanation of that rule in the Notice of Procedural Safeguards did not indicate any changes to the substance of the four-year Filing Limitation.

Altogether, the public notice generated over 200 written and in-hearing comments. The commenters largely employed a comment form circulated by the Department. The form had three headings—"proposed change," "support," and "oppose." For each proposed change, commenters could circle "support" or "oppose," and they could make additional comments. With respect to the due process hearing timeline, the comment sheet characterized the proposed change as follows: "§XVI(5)(A)(3) The statute of limitations for due process hearings will be changed to the federal standard of two years, **Page 161**." *See, e.g.*, ECF No. 71-1 at 12 (emphasis in original) (referring to the provisional adoption document). A commenter who turned to Page 161 of the provisional adoption proposal would find the revised two-year Look-Back Term, but not the four-year Filing Limitation, which appeared at page 171 and was unchanged.

When the Legislature considered the MUSER revisions, it had access to the public notices, the accompanying versions of the rules, the public comments, and additional notice forms. Specifically, the Department provided Legislature-specific notice by way of a "Rule Making Fact Sheet" that summarized significant aspects of the proposed rule changes for the Legislature's consideration. With respect to the

due process hearing timeline, the emergency rule change and the major substantive rule change fact sheets stated that "the statute of limitations for due process hearings will be changed to the federal standard of two years." ECF No. 71-4 at 26, ECF No. 71-5 at 30. Neither fact sheet provided any additional explanation as to what was meant by "statute of limitations."

The Maine Legislature approved the MUSER changes in 2010. After receiving approval, the Department finally adopted the rules. *See* 5 M.R.S.A. § 8052. In doing so, the Department unilaterally changed the Filing Limitation—MUSER § XVI.13.E—from four years to two years. *See* Dep. of Educ., State of Me., 05-071 ch. 101, Maine Unified Special Education Regulation, Birth to Age Twenty, Final Adoption 2010, 162 (2010). As a result, when Ms. S. submitted her due process hearing request in May 2013, as B.S. was about to complete the twelfth grade, a two-year Filing Limitation was ostensibly in effect.

## C.    Procedural History

Ms. S.'s hearing request asserted that the School District failed to give B.S. a free appropriate public education in each of his high school years, thereby violating the IDEA.[3] At the conclusion of the ensuing hearing, the Hearing Officer dismissed Ms. S.'s claims as to the ninth and tenth grade years because the alleged violations were, respectively, three and four years old at the time the hearing request was made, and the Hearing Officer concluded that MUSER's two-year Filing Limitation barred

---

[3] The IDEA guarantees all students a free appropriate public education. *See Endrew F. v. Douglas Cty Sch. Dist.,* 137 S. Ct. 988, 1001 (2017) (finding that the IDEA requires an educational program that is offering more than *de minimis* progress from year to year, so the educational plan must be reasonably calculated to enable a child to make appropriate progress in light of the child's circumstances).

the claims. The Hearing Officer also ruled that the School District had provided B.S. a free appropriate public education during his eleventh and twelfth grades, except for a single violation in the eleventh grade.[4]

Ms. S. appealed the hearing officer's decision to this court. *See* 20 U.S.C. § 1415(i)(2)(A) (providing that "[a]ny party aggrieved by the findings and decision made under [the impartial due process hearing subsection of the IDEA] . . . shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States."). Based in part on a Recommended Decision of U.S. Magistrate Judge John H. Rich III, I concluded that MUSER's two-year Filing Limitation was valid and that the Hearing Officer had correctly ruled that Ms. S.'s claims related to her son's ninth and tenth grade years were time-barred. I also upheld the Hearing Officer's decision regarding B.S.'s eleventh and twelfth grade years.

On appeal, the Court of Appeals affirmed my decision as to B.S.'s eleventh and twelfth grade years, but vacated my ruling that the two-year Filing Limitation was valid and Ms. S.'s claims regarding the ninth and tenth grades were time-barred. The

---

[4] The Filing Limitation's validity does not affect the timely eleventh and twelfth grade claims. *See Ms. S.*, 829 F.3d 95 at 113. In those claims, Ms. S. unsuccessfully argued that B.S. did not receive a free appropriate public education during his eleventh and twelfth grade years. *Id.* at 114-115. With respect to the eleventh grade, Ms. S. had two claims: (1) she claimed that "B.S. did not receive adequate social skills instruction" and (2) "his mid-year placement in [a new school, called "the REAL School," following an expulsion from Fryeburg Academy] 'was not reasonably calculated to provide him with meaningful benefit.'" *Id.* at 114. With respect to the twelfth grade, Ms. S. asserted the same arguments about B.S.'s placement in the REAL school. *Id.* at 115. I adopted the Magistrate Judge's recommended decision, thereby affirming the Hearing Officer's finding of one violation during the two years in question: for about a month after B.S.'s expulsion from Fryeburg Academy, the state failed to provide him with a free appropriate public education. *Ms. S. v. Reg'l Sch. Unit 72*, No. 2:13-cv-453, 2015 WL 1486757, at *19 (D. Me. Mar. 31, 2015) (*aff'd* in part, *vacated* in part, 829 F.3d 95 (1st Cir. 2016)). The First Circuit affirmed my finding that, at all other times throughout the eleventh and twelfth grades, B.S. received a free appropriate public education. *Ms. S.*, 829 F.3d 95 at 100.

case was remanded for a redetermination of that issue.[5] I subsequently granted the Department leave to intervene. Thereafter, the Department, Ms. S., and the School District compiled and submitted a more complete record of the rulemaking proceedings relating to the Department's adoption of the MUSER changes in 2010. ECF No. 56, No. 71.

## II. LEGAL ANALYSIS

I first address (A) whether, as the School District contends, the Look-Back Term and Filing Limitation are the same and should be treated as a single time limit, or whether the terms are distinct and must stand on their own when judged against the Maine Administrative Procedure Act ("MAPA"), 5 M.R.S.A. § 8001, *et seq.*, requirements; and then consider (B) whether the Department's adoption of the two-year Filing Limitation survives judicial review under MAPA by (1) satisfying the

---

[5] The First Circuit provided the following direction:

> In sum, we conclude that the district court did not properly evaluate the validity of the two-year filing limitation under MAPA's prescribed rulemaking procedures. The district court did not address the notice issue raised by Ms. S. as to the original 2009–2010 rulemaking. In addition, it made three errors when evaluating the 2009–2010 rulemaking's compliance with MAPA's legislative review requirements: (1) it erroneously analyzed certain materials regarding the Legislature's intent; (2) it concluded that subsequent rulemakings cured defects in the original 2009–2010 rulemaking; and (3) it did not apply a MAPA-provided review standard to legislative-review-stage violations of the rulemaking process.

> We recognize that, despite these errors, the court's ultimate conclusion—that the two-year filing limitation is valid—could be correct. However, we are unable to affirm that judgment in light of the district court's incomplete analysis, the parties' deficient briefing, and the murky record before us. We thus remand the case to the district court to reevaluate the validity of the two-year filing limitation.

> On remand, the district court's resolution of the validity of the two-year filing limitation rule should apply the MAPA-provided judicial review framework.

*Ms. S.*, 829 F.3d 95 at 112-13.

notice and hearing requirements under 5 M.R.S.A. § 8053 and § 8057, and (2) satisfying MAPA's legislative review requirements under 5 M.R.S.A. § 8072.

## A.    The Look-Back Term and Filing Limitation are Different

The School District and the Department argue that the Look-Back Term and the Filing Limitation—despite being separate, differently worded rules—mean the same thing and establish a single deadline.  This argument relies on decisions from the Third Circuit and Ninth Circuit Courts of Appeals that addressed the two sections of the IDEA which correspond to the two MUSER rules.  *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601 (3rd Cir. 2015), *Avila v. Spokane Sch. Dist. 81,* 852 F.3d 936 (9th Cir. 2017).  In both cases, the courts concluded that Congress intended to establish a single limitation period—the Filing Limitation—and the different wording was a mistake resulting from miscommunications when the House and Senate reconciled the IDEA.  Thus, in *G.L.*, the Third Circuit reasoned that,

> when we look to the [Filing Limitation's] surrounding words and provisions and their context, and apply the cardinal rule that a statute is to be read as a whole, it is clear that [the Look-Back Term provision], though poorly penned, was intended merely as a synopsis of [the Filing Limitation's] statute of limitations [rather than as a second, different statute of limitations].

802 F.3d at 617-18 (internal quotations and citations omitted).

The Department and School District reason that because the MUSER rules are modeled after their federal analogs in the IDEA, the MUSER rules should be similarly construed.  Thus, they contend, the legislative approval for reducing the Look-Back Term from four years to two years—considered in conjunction with the rulemaking notices' explanation of the Department's intention to adopt a two-year "statute of limitations" for IDEA hearing requests—provided ample justification for

the Department's revision of the Filing Limitation from four years to two, so that the rule would be in sync with the revised two-year Look-Back Term and would be consistent with a two-year statute of limitations, as intended. This argument cannot be squared, however, with the First Circuit Court of Appeals' decision in this case.

The First Circuit's decision viewed the MUSER Look-Back Term and Filing Limitation rules as separate, "unambiguous" provisions. *See Ms. S.*, 829 F.3d at 110 ("Ordinarily, the [Maine] Law Court does not look beyond language approved by the Legislature to determine the Legislature's intent where, as here, the language is unambiguous."). It also explained why the two rules should be read as establishing different standards that operate together to give parents sufficient time to make an informed judgment about whether they want to pursue an IDEA claim.

> We disagree that logic requires either identical timelines for both the Look-Back Term and the Filing Limitations or a longer timeline for the Look-Back Term. While a longer Filing Limitation would not mirror the federal regulatory scheme, it could reflect a plan to give parents more time for at least one stage of the process. Indeed, it does not strike us as illogical to give parents more time to consult with counsel, consider their options, and decide how to proceed once they are aware that a violation took place. *The court therefore erred in finding an illogical outcome that required the court to examine legislative intent.*

*Id.* 879 F.3d at 111 (emphasis added).

The First Circuit's interpretation of the MUSER rules stands in marked contrast with the Third Circuit's opinion in *G.L.*, which found the analogous provisions in the IDEA to be ambiguous and, therefore, found it necessary to examine the IDEA's legislative history in an effort to understand and reconcile the two requirements, codified at 20 U.S.C. §§ 1415(b)(6)(B) and (F)(3)(C). The Court explained:

Here, the language, context, and structure of § 1415 lead inexorably to one conclusion: § 1415(b)(6)(B), [IDEA's Look-Back Term], was intended to reflect the same statute of limitations set forth in § 1415(f)(3)(C) [, the IDEA's Filing Limitation]. To the extent that some of its language appears to conflict with that conclusion, the legislative history confirms what is apparent from our analysis of the statute itself. That is, *the inconsistent language reflects nothing more than a drafting error in the reconciliation process, turning a passage that was at each stage in the legislative process thought to be a statute of limitations into something that both contravenes congressional intent and renders the statute illogical.*

*G.L.*, 802 F.3d at 625 (emphasis added). The Ninth Circuit reached a similar conclusion in *Avila*, finding that the IDEA's Look-Back Term, "though poorly penned, was intended merely as a synopsis of [the IDEA's Filing Limitation's] 'knew or should have known' benchmark for a statute of limitations." 852 F.3d at 942 (quoting *G.L.*, 802 F.3d at 618).

The Department and School District contend that because the First Circuit never considered the interplay between the two IDEA provisions that correspond to the two MUSER rules at issue here, I am not bound to adopt the First Circuit's construction of the rules as separate, unambiguous logical provisions. I find this contention unpersuasive.[6]

The First Circuit's decision recognized that MUSER's Filing Limitation may be longer than the corresponding federal scheme and need not mirror that scheme. *See Ms. S.*, 829 F.3d at 111 ("While a longer Filing Limitation would not mirror the

---

[6] The School District could have urged the Court of Appeals to consider the legislative history of the IDEA in interpreting the MUSER rules, but it failed to do so. The Third Circuit decided *G.L. v. Ligonier Valley School District Authority* in September, 2015. 802 F.3d 601 (3rd Cir. 2015). Although the appellate briefs in *Ms. S.* were submitted to the First Circuit in the spring and summer of 2015, the First Circuit issued its decision in *Ms. S.* in July, 2016. There was ample time for the School District to have sought to file a supplemental brief addressing the *G.L.* decision.

federal regulatory scheme, it could reflect a plan to give parents more time for at least one stage of the process."). This is in keeping with the IDEA, which expressly authorizes the states to adopt an "explicit time limitation for requesting a hearing" that is different than the time in the IDEA itself. *See* 20 U.S.C. § 1415(f)(3)C).

Thus, even if, as *G.L.* and *Avila* determined, states may adopt a single Filing Limitation under the IDEA, states are not compelled to do so and may adopt rules that result in a longer horizon within which hearing requests may be made. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also United States v. Matthews*, 643 F.3d 9, 13 (1st Cir. 2011) ("The law of the case doctrine . . . prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." (internal citations omitted)). The First Circuit's construction of the MUSER rules in this case, as the law of the case, is controlling. The Department and School District's wish to have that construction reconsidered must be addressed to the Court of Appeals, not the District Court.

Because the First Circuit's decision is binding circuit precedent establishing that MUSER's Look-Back Term and Filing Limitation rules are unambiguous and establish separate time limits, they cannot be conflated. Accordingly, the validity of the Department's 2010 revision of the four-year Filing Limitation rule to two years, made after the Legislature completed its review of the proposed MUSER rule changes, is an action that must stand on its own when judged against MAPA's requirements for the promulgation of administrative rules.

**B.   Judicial Review Under MAPA**

Ms. S. alleges violations of MAPA's rulemaking requirements that involve two different standards of judicial review.

First, Ms. S. alleges that the Department's failure to properly notify the public of the rule change constituted a MAPA violation that affected public participation, 5 M.R.S.A. §§ 8053, 8057.  Section 8057 provides that, if an agency violates the Notice Section (5 M.R.S.A. § 8053), and the violation is more than an "insubstantial deviation," then the rule is "void and of no legal effect." 5 M.R.S.A. § 8057.

Second, Ms. S. alleges that the Department's failure to obtain proper legislative approval for the rule change constituted "other" procedural error, which is MAPA's catch-all category for violations that do not have an otherwise specified level of review.  5 M.R.S.A. § 8058.  Procedural error violations trigger a harmless error analysis.  *Ms. S.*, 829 F.3d at 107-8.  Errors are harmful—and therefore invalidate the challenged rule—only where they are "substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred."  5 M.R.S.A. § 8058.

I first address (1) whether the Department's rulemaking notices were deficient and, if so, whether they were an insubstantial deviation from the notice requirements, and then consider (2) whether the legislative review of the proposed rules that occurred was in error, and, if so, whether the error was harmful.

1. **Rulemaking Violations Related to Notice and Hearing Requirements under 5 M.R.S.A. §§ 8053 and 8057**

Ms. S. first alleges that the 2010 change to the Filing Limitation violated MAPA's requirements regarding the notice an agency must provide as part of the rulemaking process as set forth in 5 M.R.S.A. § 8053.

Four separate provisions in the Notice Section require copies of proposed rules to be made available to the public:  First, section 8053(3)(D) requires that the Notice "[i]f possible . . . indicate where a copy of the proposed rule can be obtained." 5 M.R.S.A. § 8053(3)(D).  Second, section 8053(3-A) requires that "[a]t least 20 days prior to hearing on any proposed rule and at least 20 days prior to the comment deadline of any rule without a hearing, the agency shall make copies of the proposed rule available in writing or, with agreement of the requestor, electronically to persons upon request."  5 M.R.S.A. § 8053(3-A).  Third, section 8053(6) requires that "[a]n agency, on its publicly accessible website, shall either post its proposed and adopted rules or provide a link to the proposed or adopted rules posted on the Secretary of State's website."  5 M.R.S.A. § 8053(6).  Finally, section 8053(7)(E) requires that agencies providing notice in a newspaper "[p]rovide the website address where the long notice pursuant to subsection (3) is posted," which, again, requires the agency to "indicate where a copy of the proposed rule can be obtained."  5 M.R.S.A. §§ 8053(3)(D), 8053(7)(E).

Here, the Department first provided notice of its emergency and provisionally adopted MUSER rules on December 2, 2009.  The notice stated that "[t]he statute of limitations for due process hearings will be changed to the federal standard of two

years," but the notice was not accompanied by the revised rule setting forth the two-year Filing Limitation that the Department ultimately adopted. This omission thus violated the requirement that agencies make copies of the proposed rule changes available to the public.

As I have noted, rule changes made in violation of the process prescribed in section 8057 are "void and of no legal effect, except that insubstantial deviations from the requirements of [the Notice Section] do not invalidate the rule subsequently adopted." 5 M.R.S.A. § 8057. In assessing the substantiality of the deviation that occurred here, I begin by recognizing that the purpose of notice is, in large measure, to inform the public of what the agency intends to change and to provide the public a meaningful opportunity to comment. Here, the public was not provided the text of the rule the Department wished to adopt and, thus, the public did not have a meaningful opportunity to comment. The School District and the Department argue that this omission should be excused because the written comments that are part of the Administrative Record demonstrate that despite the Department's failure to indicate the change in the Filing Limitation rule itself, the public understood that the Look-Back Term and the Filing Limitation would both be two years.

It is true that the written comments that were received made no mention of either the Look-Back Term or Filing Limitation rules. It is also true that nearly all of the commenters used the form circulated by the Department, which instructed the commenter to circle "support" or "oppose" with reference to the following: "§XVI(5)(A)(2) The statute of limitations for due process hearings will be changed to the federal standard of two years, **Page 161**." *See, e.g.*, ECF No. 71-1 at 12 (emphasis

in original).  If commenters turned to Page 161 of the provisional adoption proposal, they would find the revised Look-Back Term.

The absence of comments explicitly addressing the Filing Limitation change from four years to two years is not surprising given that the proposed MUSER rules did not describe such a change in the notice or in the Filing Limitation rule, nor did the proposal direct commenters to the page the Filing Limitation appeared on as it did with respect to the Look-Back Term.  Given such lack of support in the record, the Department and School District's argument that the public must have "understood" what the Department actually intended is no more than speculation.

What is certain from the Administrative Record is that a straightforward violation of the notice requirements occurred because the Department was obligated to provide the public with a copy of the rule showing the proposed change to the Filing Limitation rule, but failed to do so. When the Department then changed the rule anyway—without first having made a copy of the revised rule available to the public and the Legislature—it substantially deviated from the requirements of the Notice Section.

In sum, MAPA's Notice Section requires agencies to provide the public access to a proposed rule.  *See* 5 M.R.S.A. §§ 8053(3)(D), 8053(3-A), 8053(6), 8053(7)(E). Posting a proposed rule with a Filing Limitation substantively different from the finally adopted rule (four years versus two years) violated that requirement and cannot be fairly excused as an insubstantial deviation.  Applying the judicial review standard required by section 8057, I conclude that the Department substantially

deviated from the notice requirements and, therefore, the Filing Limitation was "void and of no legal effect."  5 M.R.S.A. § 8057.

## 2.  Rulemaking Violations Related to Legislative Review Requirements under 5 M.R.S.A. § 8072

Ms. S. also alleges a MAPA violation in the second category, "any other procedural error." 5 M.R.S.A. § 8058.  She argues that the change the Department made to the Filing Limitation after the Legislature reviewed the MUSER rules was a procedural error under MAPA § 8072 ("the Legislative Review Section").  5 M.R.S.A. § 8072.

Legislative review is required when an agency changes or creates a "major substantive rule," as opposed to a "routine technical rule."  5 M.R.S.A. § 8072.  The MUSER rules qualify as major substantive rules.  *See* 20-A M.R.S.A. § 7005(1) ("The commissioner is authorized to adopt rules necessary for the administration of this chapter and chapters 303 and 305.  These rules are major substantive rules as defined in Title 5, chapter 375, subchapter 2-A.")  Violations of the Legislative Review Section are considered "other procedural errors" under MAPA.  *Ms. S.*, 829 F.3d at 108.

Under the Legislative Review Section, an agency provisionally adopting a rule must submit "[t]he full text of the rule provisionally adopted by the agency [to the Legislature] with new language underlined and with the language to be deleted from any existing rule stricken through but clearly legible[.]"  5 M.R.S.A. § 8072(2)(A).  The provisionally adopted rule is then subject to committee review and, finally, subject to action by the full Legislature.  5 M.R.S.A. § 8072(4)-(8).  "A provisionally adopted rule . . . may not be finally adopted by an agency unless . . . [l]egislation authorizing the

adoption . . . is enacted into law" or if "[t]he agency submits the rule . . . and the Legislature fails to act on the rule [during the legislative rule acceptance period]." 5 M.R.S.A. § 8072(11).

Here, the Department submitted a copy of the proposed MUSER rules indicating changes with strikeouts and underlines. The initial submission entitled "2009 Proposed Emergency Refinements" included the text of the MUSER rules, as well as the Appendix consisting of the revised "Notice of Procedural Safeguards" setting forth the "Due Process Hearing Procedure" in a form that would eventually be distributed to interested parties. The Appendix also showed proposed changes with strikeouts and underlines. As I have explained, in both the proposed rules and the accompanying updated Notice of Procedural Safeguards, the Look-Back Term was changed from four years to two years. The Filing Limitation provision was untouched in the rule text. In the Notice of Procedural Safeguards, the explanation of the filing deadline indicated two minor changes as to form, but left the timeline at four years. A reader could logically conclude from the Notice of Procedural Safeguards that the drafters had looked at the provision, considered what changes were necessary, and decided to make only minor, non-substantive adjustments.

Because the filing deadline provision was unchanged, a provisionally adopted rule establishing a two-year Filing Limitation was never subject to committee review or approval by the full Legislature. Therefore, the Department was without authority to replace the existing four-year rule with a two-year Filing Limitation rule. *See* 5 M.R.S.A. § 8072(1) (stating that rules have "legal effect only after review by the Legislature followed by final adoption by the agency.").

Violations of MAPA's legislative review requirements are subject to harmless error analysis.[7]  As I have noted, an error is harmful, and therefore invalid, only if the error is "substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred."  5 M.R.S.A. § 8058.  The School District contends that the violations were harmless because "in the spring of 2010, everyone involved in the rulemaking process . . . believed MUSER contained a single statute of limitations that had just been changed from four years to two."  ECF No. 99 at 16.  The contention that the unilateral rule change was harmless error is unpersuasive for three reasons.

First, as previously explained, any person who read the notice and the proposed MUSER rules could have reasonably concluded that there was no need to comment on the Filing Limitation rule specifically because the proposed rules implied that the four-year Filing Limitation would remain unchanged.  It is not reasonable to infer from the record that "everyone" understood the term "statute of limitations" to encompass the Filing Limitation.

---

[7]  In its decision, the First Circuit identified harmless error review as the appropriate standard for analyzing an "other procedural error" violation, such as a violation of the Legislative Review Section:

> If a court finds either of the first two types of violations [i.e., exceeded rulemaking authority or violated § 8057], the court must hold the rule invalid. In a case dealing with the third type of MAPA violation—"any other procedural error"—the court may find the rule invalid only if the procedural error is substantial and "of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred." The Maine Law Court has described the "substantial likelihood" standard as "a harmless error standard similar to that employed in ordinary civil litigation.

*Ms. S.*, 829 F.3d at 107-8 (internal citations omitted).

Second, under MAPA, the Legislature does not review and approve an agency's rulemaking notices; rather, it reviews and approves (or disapproves) the proposed rules themselves, so even if there was sufficient notice of a change to the Filing Limitation, the deficient proposed copy of the rules was a substantial violation. Here, the Legislature never received a proposed rule that reduced the four-year Filing Limitation to two years.

Finally, by its vote, the Legislature actually approved the rule establishing a four-year Filing Limitation. The Department's final adoption of a two-year Filing Limitation was a substantial error because the filing limitation it adopted was substantially different insofar as it was two years longer than the rule approved by the Legislature.

Because the Department's violations of MAPA's legislative review requirements associated with the unilateral adoption of a two-year Filing Limitation were substantial and not harmless, I conclude, in accordance with section 8058, that the change was void and of no legal effect.

### III. CONCLUSION

"An agency must comply with the [M]APA before it adopts a rule; otherwise the rule has no legal effect." *Roderick v. State*, 79 A.3d 368, 371 (Me. 2013) (quoting *Mitchell v. Me. Harness Racing Comm'n*, 662 A.2d 924, 926 (Me. 1995)); if a rule is void, it is "of no effect whatsoever . . . an absolute nullity." *Void*, BLACK'S LAW DICTIONARY (10th ed. 2014). In addition, the Department's noncompliance with MAPA's legislative review requirements cannot be excused as harmless error.

Because the Department's final adoption of a two-year Filing Limitation in 2010 was void and of no legal effect, the pre-existing four-year filing deadline was in effect at the time Ms. S. requested a due process hearing.[8]  The Hearing Officer therefore erred by concluding that Ms. S.'s claim as to the ninth and tenth grades were untimely by failing to receive evidence regarding those grades.  Accordingly, the Hearing Officer's decision to exclude evidence as to B.S.'s ninth and tenth grade years is **VACATED** and this case is **REMANDED** to the Hearing Officer for further proceedings consistent with this decision.

**SO ORDERED.**

**Dated:  This the 20th day of November, 2017.**

**_____/s/ JON D. LEVY_____**
**U.S. DISTRICT JUDGE**

---

[8]  To treat the 2010 change to the Filing Limitation as having terminated the existing rule, as the Department and School District contend, would afford the change a major "legal effect" contrary to  5 M.R.S.A. § 8057.  *See New England Whitewater Ctr. v. Dep't of Inland Fisheries and Wildlife*, 550 A.2d 56, 64 (Me. 1988) (remanding for further proceedings consistent with the rule that was in place prior the adoption of a non-compliant rule); s*ee also Cumberland Farms N., Inc. v. Maine Milk Comm'n*, 428 A.2d 869, 878 (Me. 1981) (concluding that a milk price order adopted by the Maine Milk Commission failed to comply with MAPA and that the process would "be governed by the last order of the Commission which is valid.").